846 F.2d 845
 Fed. Sec. L. Rep. P 93,756
TERRYDALE LIQUIDATING TRUST, Plaintiff-Appellant,
v.
Herbert BARNESS, John F. Bishop, Edgar H. Chappell, Charles
W. Corbitt, George S. Mann, Brooks Walker, Jr., Louis W.
Walker, and Charles M. Williams, individually and as
Trustees of, and David R. Bryant as Trustee of San Francisco
Real Estate Investors, and Keith L. Brown, individually, and
as San Francisco Real Estate Investors, Inc., Defendants-Appellees.
SAN FRANCISCO REAL ESTATE INVESTORS, INC., a Delaware
corporation, successor in interest to San Francisco Real
Estate Investors, a California real estate investment trust,
Counterclaimant and Third-Party Plaintiff,
v.
TERRYDALE LIQUIDATING TRUST, a New York business trust:
Terrydale Realty Trust, a Missouri business trust: Oliver
R. Grace, Oliver R. Grace, Jr., Emilio G. Collado, William
Bolton, and Robert A. Posner, individually and as trustees
of Terrydale Liquidating Trust; J. Russell Gramlich, J.
Harlan Stamper, Thomas J. Murphy, John D. O'Flaherty, and
John J. Gramlich, individually and as trustees of Terry-Dale
Realty Trust; Lincoln Tower Building Co., a Colorado
partnership, Subdale Corporation, a New York corporation,
Morris, Larson, King, Stamper & Bold, a Missouri
professional corporation, Harry A. Morris, Roy A. Larson,
Thomas E. King, J. Harlan Stamper, Lawrence R. Bold, Lynn C.
Hoover, Donald H. Loudon, Gordon N. Myerson, Steven H.
Goodman, Tommy W. Taylor, Laurence R. Tucker, David M.
Rhodes, Robert B. Keim, Jack W. Isley, Jr., Thomas R.
Larson, Steven G. Emerson, Gregory M. Kratofil, John A.
Koepke, and John R. Cockle, individually and as partners of
Morris, Larson, King, Stamper & Bold, Counterclaimant and
Third-Party Defendants.
 No. 793, Docket 87-7867.
 United States Court of Appeals,
Second Circuit.
 Argued April 7, 1988.
Decided May 12, 1988.
 
 Sidney Bender, Garden City, N.Y. (Aaron Lewittes, Janine L. Bender, Leventritt Lewittes & Bender, of counsel), Rex E. Lee, Washington, D.C. (Gene C. Schaerr, David Orentlicher, Sidley & Austin, of counsel), for plaintiff-appellant.
 Douglas M. Kraus, Barry Garfinkel, New York City (Erskine D. Henderson, Mitchell C. Sockett, Skadden, Arps, Slate, Meagher & Flom, of counsel), for defendants-appellees.
 Before OAKES, MINER, Circuit Judges, and POLLACK, District Judge.*
 PER CURIAM:
 
 
 1
 This appeal grows out of six years of litigation stemming from an unsuccessful struggle in 1981 for control of a registered Missouri real estate investment trust, Terrydale Realty Trust ("TRT").
 
 
 2
 On January 9, 1981, BCG Associates ("BCG"), a New York partnership, made an unsolicited tender offer for 34.7% of the shares of TRT, offering $33.50 per share, in cash. The purpose of the offeror was to obtain control of TRT. Had the shares been acquired under the offer, when added to the 17.9% interest already owned by BCG's principals, it would have given BCG absolute control of TRT. Allowing for proration of tendered shares, the TRT stockholders would have had only a small amount of their shares purchased for cash, with the remainder being returned to them.
 
 
 3
 The trustees, believing that the tender offer was not acceptable, sought to obtain a better offer from BCG, viz., an agreement on its part to acquire 100% of TRT's shares at the $33.50 price, but BCG refused to amend its offer to include all shares to TRT. The trustees would not have opposed BCG's tender had it been for all of the TRT shares.
 
 
 4
 There were substantial disadvantages for TRT's stockholders apparent in BCG's partial offer, including loss of TRT's favorable tax status, a probable decline in marketability of its shares, and possibly cessation of its status as a reporting company under the Federal Securities Laws, among other things.
 
 
 5
 The trustees, two of whom were also substantial shareholders, set about to seek more attractive alternatives for TRT's shareholders. They solicited bids from numerous corporate and real estate investors, including seven of the largest and most sophisticated realty investors in North America. The TRT trustees, in essence, put TRT up for "auction" to the highest bidder. None of the sources approached was willing to offer a transaction which would yield more than $33.50 to all TRT shareholders. Ultimately, the trustees turned to San Francisco Real Estate Investors, Inc. ("SFREI"), and negotiations with the latter ripened into a proposal from SFREI to purchase TRT's four Denver office buildings, representing about 80% of the value of TRT's assets, a purchase to be made at prices set forth in recently obtained independent appraisals. None of the other potential White Knights was willing to make an offer as attractive as that of SFREI, and the District Court explicitly found that SFREI's offer was the best offer available.
 
 
 6
 TRT made the sale, and the trustees simultaneously voted to liquidate the trust and declared a liquidating dividend, thereby thwarting the tender offer. An initial liquidating distribution of $24 per share was declared. Over the next 12 months, a further $9.85 was distributed to TRT shareholders, bringing the total proceeds of the sale and liquidation to $33.85 per share for 100% of TRT's shares.
 
 
 7
 After the trustees' decision to sell and liquidate was announced, BCG extended its tender offer expiration date, and adjusted its offering price to $9.50 per share in order to take into account the $24.00 per share initial liquidating dividend. BCG acquired 80,884 shares pursuant to its extended tender offer, leaving it with approximately 38% of the outstanding TRT shares. During 1981, BCG continued to purchase TRT shares through a series of open market purchases. By January, 1982, BCG had apparently acquired just under 50% of the outstanding TRT shares.
 
 
 8
 On January 28, 1982, the TRT shareholders approved the creation of the Terrydale Liquidating Trust ("TLT"), the named plaintiff and appellant in this action, and elected as TLT trustees a slate of nominees controlled by the BCG group. BCG then caused TLT, newly controlled by what, in essence, was a defeated tender offerer, to be named plaintiff in this suit (1) against the former trustees of TRT, charging that they sold the TRT property at distressed prices to defeat the tender offer in the service of personal interests of some of the trustees, and (2) against SFREI, the purchaser of the realty, alleging that it had aided and abetted the allegedly tainted sale, and in any event, that it had sufficient notice of the trustees' alleged breach of fiduciary duty to warrant the equitable claim of restitution from SFREI.
 
 
 9
 In December, 1982, TLT reached a settlement with the former TRT trustees under which TLT abandoned its lawsuit against them and SFREI remained as the only defendant in the lawsuit.
 
 
 10
 In June, 1984, SFREI made a motion for summary judgment, which the District Court granted in part and denied in part. 611 F.Supp. 1006, 1031, 1033 (S.D.N.Y.1984). The Court found that there was no genuine factual issue in respect to plaintiff's claim that SFREI was an aider and abettor of the alleged breach of fiduciary duty of the trustees or to the alleged breach of the unanimity provision of the Declaration of Trust. The aider and abettor liability claim was therefore properly dismissed on summary judgment for TLT's failure to establish the key material issue, SFREI's actual knowledge. Marine Midland Bank v. Smith, 482 F.Supp. 1279, 1290 (S.D.N.Y.1979), aff'd mem., 636 F.2d 1202 (2d Cir.1980). SFREI's constructive knowledge was an insufficient basis for recovery.
 
 
 11
 The Court denied summary judgment on an alleged domination and control issue pertaining to the trustees. The sale to SFREI required the approval of three of the five trustees, including two affirmative votes from among trustees Stamper, Murphy, and O'Flaherty. All trustees had voted to sell the assets, and the question raised whether the votes were independent suggested the need of a factual determination, as stated by the Judge:
 
 
 12
 Whether the affirmative votes of the non-Gramlich trustees [the three outsiders] were legally effective and valid, however, will depend on whether plaintiff can establish its claim of domination and control by the Gramlichs. The existence vel non of domination and control, and of SFREI's notice of same, involve factual determinations which prevent this Court from presently resolving the merits of plaintiff's restitutional claim.
 
 
 13
 611 F.Supp. at 1033 (footnote omitted).
 
 
 14
 After a 14-day non-jury trial in 1986, the District Court, in a comprehensive and well-reasoned opinion, dismissed TLT's remaining claims against SFREI on the merits. 642 F.Supp. 917 (S.D.N.Y.1986).
 
 
 15
 In considering, evaluating, and determining to make the sale of the properties, the trustees were found to have measured up to the standard set in Hanson Trust PLC v. ML SCM Acquisition Inc., 781 F.2d 264 (2d Cir.1986), of reasonable diligence in gathering and considering material information. The "independent" trustees deliberated a period of days, not hours, before approving the deal. During that time, as the evidence showed, the trustees solicited extensively for bids for the assets or stock. Unlike Hanson, the TRT trustees were not presented with "more or less a fait accompli." Rather, the trustees, with the assistance of their expert advisors, considered not just the SFREI proposal, but all available alternatives, and the independent trustees had called a separate meeting on their own initiative at which they gave separate consideration to the available options; they properly concluded that only a deal struck with SFREI would benefit all shareholders.
 
 
 16
 The duty, indeed the obligation, of the TRT trustees under the circumstances of this case was to maximize the value for all shareholders, and Judge Sand had ample basis upon which to conclude that the trustees had met their duty of care. They were found to have sought, in the exercise of an informed business judgment, a solution which would benefit 100% of the shareholders of the trust, rather than leaving them to be forced into a minority position in an entity of which BCG had control, and with little hope of ever realizing the full value of their remaining investment in TRT. TLT never established a prima facie case for breach of the duty of loyalty or the duty of care and the burden to defend the transaction as fair and reasonable never shifted. Norlin Corp. v. Rooney, Pace Inc., 744 F.2d 255, 264 (2d Cir.1984); Hanson Trust PLC, supra, at 277.
 
 
 17
 The District Court rejected plaintiff's contention, as contrary to fact, that the Gramlichs had acted in self-interest and in bad faith; and it found that the non-Gramlich trustees had acted independently, reasonably, and were not dominated and controlled as alleged; and it found that all the trustees had properly exercised their duty of care. In voting for the sale under the proposal and the Plan of Complete Liquidation, it is clear that the trustees fully recognized that they were voting to give up their positions of control of TRT and any possible benefits that they might derive from the continued existence of TRT.
 
 
 18
 The Judge found further that no circumstances existed which would warrant imposition of a constructive trust, since there was an absence of SFREI's actual knowledge of any alleged breach by the trustees. Incident to this holding, the Judge resolved the facts as showing that the approval of the sale and the liquidation of TRT did not violate the terms of TRT's Declaration of Trust; that the sale was under all the facts and circumstances reasonable; and that SFREI had no reason to investigate the actions of the trustees or to think that there was any breach by them.
 
 
 19
 The District Judge went into the values of the properties sold, giving careful consideration to and weighing the appraisal testimony, and found that the sales had been made within the current fair market value. SFREI's offer was found explicitly to be "the best offer available"; the Judge found that there was no "fire sale," as contended by the plaintiff, and that SFREI's expert had given credible and reliable testimony. On the facts and circumstances in evidence, the Court properly rejected the contrary hindsight appraisals of TLT's expert. At hand were accurate reflections of the property values, especially in view of the long-term leases held by a number of tenants. Significantly, SFREI, an independent outsider, had purchased the properties in an arm's-length, reasonable, commercial transaction.
 
 
 20
 The records on the motion for summary judgment and of the trial satisfy us that Judge Sand's factual findings thereon are not clearly erroneous; to the contrary, they are amply supported by the record and we agree with his conclusions and rulings on the law substantially for the reasons given by him therefor.
 
 
 21
 The requests for Rule 60(b) relief and Rule 11 sanctions are without any merit whatsoever. The other specifications of alleged error appealed from have each been examined and we find that there is no merit in them.
 
 
 22
 AFFIRMED.
 
 
 
 *
 Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation